UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARTCHELA POPOVA MLADENOV, MLADEN MLADENOV, CHAN M. MAO, on behalf of themselves and those similar situated, | Honorable Joseph E. Irenas |
| Plaintiffs, | CIVIL ACTION NO. 15-00373-JEI-AMD |
| vs. | |
| WEGMANS FOOD MARKETS, INC.; ABC-CORPS 1-10 (fictitious entities) | |
| Defendants. | |
| MARTCHELA POPOVA MLADENOV, MLADEN MLADENOV, CHAN M. MAO, on behalf of themselves and those similar situated, | |
| Plaintiffs, | CIVIL ACTION NO. 15-00382-JEI-AMD |
| vs. | |
| WHOLE FOODS MARKET GROUP, INC.; ABC-CORPS 1-10 (fictitious entities) | |
| Defendants. | |
| CHAN M. MAO, on behalf of herself and those similar situated, | |
| Plaintiff, | CIVIL ACTION NO. 15-00618-JEI-AMD |
| vs. | |
| ACME MARKETS, INC.; ABC-CORPS 1-10 (fictitious entities) | **OPINION** |
| Defendants. | |

**APPEARANCES:**
ANGELOVA LAW FIRM, LLC
BY:  Aneliya M. Angelova, Esq.
     Andrew H. Yang, Esq.
10 000 Lincoln Drive East
Suite 201
Marlton, New Jersey 08053
     Counsel for Plaintiffs


GREENBERG TRAURIG, LLP
BY:  David E. Sellinger, Esq.
200 Park Avenue
P.O. Box 677
Florham Park, New Jersey 07932
     Counsel for Defendant Whole Foods Market Group, Inc.


PEPPER HAMILTON LLP
BY:  Matthew V. DelDuca, Esq.
     Angelo A. Stio III, Esq.
301 Carnegie Center
Suite 400
Princeton, New Jersey 08543-5276
     Counsel for Defendant Wegmans Food Markets, Inc.


BUCHANON INGERSOLL & ROONEY PC
BY:  Christopher J. Dalton, Esq.
     Lauren A. Woods, Esq.
550 Broad Street, Suite 810
Newark, New Jersey 07102
     Counsel for Defendant ACME Markets, Inc.


**IRENAS,** Senior United States District Judge:

     In these three diversity class actions, Plaintiffs

Martchela Popova Mladenov, Mladen Mladenov and Chan Mao allege

on behalf of themselves, and all of those similarly situated,

that Whole Foods Market Group, Inc. ("Whole Foods"), Wegmans

Food Markets, Inc. ("Wegmans"), and ACME Markets, Inc. ("ACME")

misrepresented various bread and bakery products as being baked

fresh in store, when they were actually frozen, processed, or

baked in another location or by another entity, in violation of The New Jersey Consumer Fraud Act ("CFA"), The New Jersey Truth-In-Consumer Contract Warranty and Notice Act ("TCCWNA") and New Jersey Law regarding Express Warranties.[1]

Defendants presently move to dismiss Plaintiffs' First Amended Complaints pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.  For the reasons stated herein, Defendants' motions will be **GRANTED**.

## I.    BACKGROUND

Plaintiffs filed their initial Complaints in the Superior Court of New Jersey, Camden County.  Promptly thereafter, Defendants each removed to this Court on diversity grounds and Plaintiffs amended their initial Complaints.  Plaintiffs' Amended Complaints allege the following:

Plaintiffs Martchela Mladenov, Mladen Mladenov and Chan Mao claim to be health conscious New Jersey residents who have purchased Defendants' bread and bakery products in New Jersey stores.[2] (Whole Foods Amend. Compl. ¶¶ 4-6, 9; Wegmans Amend. Compl. ¶¶ 4-6, 9; ACME Amend. Compl. ¶¶ 4-5, 9).  Plaintiffs

---

[1] Since the same Plaintiffs, represented by the same counsel, bring virtually identical claims against Defendants on similar sets of facts, the Court addresses the motions to dismiss together.

[2] Plaintiffs claim to have purchased such products from Whole Foods and Wegmans on a "regular basis over the past six years."  (Whole Foods Amend. Compl. ¶ 9; Wegmans Amend. Compl. ¶ 9)

bring these class actions against Defendants on behalf of

themselves and classes defined as:

> All individuals and entities within the State of New
> Jersey who purchased bread and/or bakery products
> advertised and sold as "made in house" and/or "freshly
> baked" and/or "freshly boiled" and/or "fresh" in a
> Whole Foods Market store located in New Jersey on or
> after December 14, 2008.

(Whole Foods Amend. Compl. ¶ 30.)

> All individuals and entities within the State of New
> Jersey who purchased bread and/or bakery products
> advertised and sold as "store baked" and/or "fresh
> baked" in a Wegmans store located in New Jersey on or
> after December 14, 2008.

(Wegmans Amend. Compl. ¶ 25)

> All individuals and entities within the State of New
> Jersey who purchased bread and/or bakery products
> advertised and sold as "fresh bread" and/or "baked
> fresh" and/or "baked in our store daily" and/or "from
> our bakery made for you" in an ACME store located in New
> Jersey on or after December 14, 2008.

(ACME Amend. Compl. ¶ 22)

Each class excludes Defendants, their employees,

subsidiaries and affiliates, and Defendants' executives, board

members, and legal counsel.  Plaintiffs also bring these actions

on behalf of subclasses defined as those who purchased the same

bread and bakery products as the main class but used a credit or

debit card to do so.[3]  (Whole Foods Amend. Compl. ¶ 31; Wegmans

Amend. Compl. ¶ 26; ACME Amend. Compl. ¶ 23)

---

[3] The subclass in the Whole Foods complaint also includes those who purchased
the same products through Whole Foods's "shop online" program since December
14, 2014.  (Whole Foods Amen. Compl. ¶ 31)

The Amended Complaints allege that Defendants display signs and advertisements suggesting that certain bread and bakery products are made in house from scratch.  (Whole Foods Amend. Compl. ¶¶ 18-19; Wegmans Amend. Compl. ¶¶ 13-14 ; ACME Amend. Compl. ¶ 11)  Specifically, Defendant Whole Foods posts signs such as "'MADE IN HOUSE BREAD,' MADE IN HOUSE BAGELS AND ROLLS,' 'FRESHLY BOILED & PLAIN BAGEL', 'MADE IN HOUSE MULTI GRAIN EVERYTHING BAGEL,' and 'MADE IN HOUSE SNOW CAP CAKES.'"[4] (Whole Foods Amend. Compl. ¶ 18).  Defendant ACME posts signs such as "'BAKED FRESH IN OUR OVEN, FRESH BREAD, BAKED IN OUR STORE DAILY', 'NEW! BAKED IN-STORE DONUTS' AND 'TASTY SELECTION FROM OUR BAKERY MADE FOR YOU.'" (ACME Amend. Compl. ¶ 11).  Wegmans posts signs such as "STORE BAKED ROLLS." (Wegmans Amend. Compl. ¶ 13).  Defendants allegedly charge a premium for such products. (Whole Foods Amend. Compl. ¶ 24, Wegmans Amend. Compl. ¶ 19; ACME Amend. Compl. ¶ 16)

Plaintiffs claim, however, that in reality Defendants' bread and bakery products are not made from scratch, but "1) made, parbaked and/or frozen; and/or 2) delivered frozen, parbaked or premade, and re-baked or re-heated for sale; and/or 3) not made in store.  (Whole Foods Amend. Compl. ¶ 21; Wegmans

---

[4] Plaintiffs also allege that Whole Foods's "product packaging contains a statement, 'WE BAKE DAILY, USING ONLY THE FRESHEST INGREDIENTS, INCLUDING CAGE-FREE EGGS, NATURAL BUTTERS AND THE BEST QUALITY UNBLEACHED, UNBROMATED FLOUR AVAILABLE.'"  (Whole Foods Amend. Compl. ¶ 19)  Plaintiffs do not specify on which specific products' packaging this statement appears.

Amend. Compl. ¶ 16; ACME Amend. Compl. ¶ 13).  Plaintiffs allege
further that they would not have purchased Defendants' products
absent Defendants' misleading advertisements. (Whole Foods
Amend. Compl. ¶¶ 24-25; Wegmans Amend. Compl. ¶¶ 20-21; ACME
Amend. Compl. ¶¶ 17-18)

The Amended Complaints do not identify any particular bread
or bakery products that Plaintiffs have purchased, the prices
Plaintiffs paid for such products, the particular advertisements
linked to those particular products, or when such purchases took
place.  Plaintiffs allege that, as a result of Defendants'
misrepresentations, they "have suffered an ascertainable loss of
money," but do not identify that loss with any more
particularity.  Neither do Plaintiffs claim that the bread and
bakery products they purchased lacked nutritional value due to
the products' not being made from scratch in store.

Each Amended Complaint includes counts for violations of
the CFA and TCCWNA, and for breach of express warranty.
Defendants filed the instant motions to dismiss for failure to
state a claim on April 3, 2015.

Following the receipt of the parties' submissions on the
motions to dismiss, the Court issued an Order to Show Cause as
to why each Amended Complaint's class action allegations should
not be stricken.  Specifically, the Court asked the parties to
address whether the classes defined above would be

ascertainable.   The parties submitted responsive papers and the
Court held oral argument on August 12, 2015.   Counsel for ACME
also submitted a motion to strike the declarations and exhibits
attached to Plaintiffs' response to the Order to Show Cause.

The Court will first address the Amended Complaint's class
action allegations and then the pending motions to dismiss named
Plaintiffs' underlying claims.


## II.  Plaintiffs' Class Allegations

The Court has the authority to strike class allegations at
the pleading stage under Fed. R. Civ. P. 12(f) if the complaint
demonstrates that a class action cannot be maintained.   *Smith v.
Merial Ltd.,* No. 10-439, 2012 WL 2020361, at *6 (D.N.J. June 5,
2012).   This Court has addressed and stricken class allegations
at the pleading stage on defendants' motions pursuant to Fed. R.
Civ. P. 12(f) when it becomes clear from the complaint that
plaintiffs cannot meet the certification requirements of Rule
23.   *Id.* at *4; *see also Advanced Acupuncture Clinic, Inc. v.
Allstate Ins. Co.,* No. 07-4925, 2008 WL 4056244 at *10 (D.N.J.
Aug. 26, 2008) (granting motion to strike class allegations when
it became clear injunctive relief under Rule 23(b)(2) was
inappropriate); *Clark v. McDonald's Corp.*, 213 F.R.D 198, 205 n.
3 (D.N.J. 2003) (" A defendant may move to strike class
allegations prior to discovery in rare cases where the complaint

7

itself demonstrates that the requirements for maintaining a class action cannot be met.").

Rule 12(f) states in relevant part:

> The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:
> (1)on its own; or
> (2)on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

Fed. R. Civ. P. 12(f).

Although this Court typically has stricken class allegations pleadings on defendants' motions pursuant to Rule 12(f)(2), subsection 12(f)(1) explicitly grants the Court authority to do the same without a defendant first filing a motion to strike.  Furthermore, Rule 23(c)(1)(A) states that, "at an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action."  Based on the pleadings in these cases, the Court found it appropriate to consider Plaintiffs' class allegations *sua sponte* and thus issued the aforementioned Order to Show Cause.

Plaintiffs claim to satisfy certification requirements under either 23(b)(2) or (3).  Rule 23(b) states, in pertinent part:

> A class action may be maintained if Rule 23(a) is satisfied and if:
> . . .

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) *the likely difficulties in managing a class action.*

Fed. R. Civ. P. 23(b)(emphasis added).  The Court holds that, based on the complaints and the submissions filed in response to the Order to Show Cause, Plaintiffs could not satisfy either.

### A. 23(b)(2)

The certification question under Federal Rule 23(b)(2) is a simple one.  Rule 23(b)(2) class actions are "limited to those class actions seeking primarily injunctive or corresponding declaratory relief." *Barnes v. American Tobacco Co.*, 161 F.3d 127, 142 (3d Cir 1998) (*quoting* 1 *Newberg on Class Actions* § 4.11, at 4-39).  Plaintiffs cannot adequately fulfill the purpose of certification under Rule 23(b)(2) when their claims are primarily for money damages. *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 564 (2d Cir. 1968); *see also Kaczmarek v.*

*International Business Machines Corp.*, 186 F.R.D. 307, 313
(S.D.N.Y. 1999); Advisory Committee Notes to the 1966 Amendments
to Fed. R. Civ. P. 23 ("The subdivision does not extend to cases
in which the appropriate final relief relates exclusively or
predominately to money damages.").  In *Kaczmarek,* the court
rejected class certification under 23(b)(2) for claims of breach
of contract, breach of warranty, misrepresentation and violation
of the New York Deceptive Business Practices Act, along with one
count seeking injunctive relief, because the claims were
predominately for money damages.  186 F.R.D. at 313.

Like the plaintiffs in *Kaczmarek,* Plaintiffs bring multiple
claims for money damages under the CFA, TCWNNA and for breach of
express warranty, and add one count in each case seeking
injunctive and declaratory relief.  But the mere existence of a
claim seeking injunctive and declaratory relief does not
automatically trigger 23(b)(2).  As noted in the Order to Show
Cause, the instant lawsuits are primarily for money damages, not
injunctive relief.  Plaintiffs do not contest this fact.  As a
result, Plaintiffs cannot obtain class certification under Rule
23(b)(2).

### B. Rule 23(b)(3)

"'A critical need' of the trial court at certification with
respect to actions under Rule 23(b)(3) 'is to determine how the
case will be tried, . . . including how the class is to be

ascertained.'"  *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013) (quoting *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 305 (3d Cir. 2008)).  Class certification is proper only after the trial court is satisfied after a "rigorous analysis" that all of the requirements of Rule 23 are satisfied.  *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 353 (3d Cir. 2013).  "The rigorous analysis requirement applies equally to the ascertainability inquiry."  *Byrd v. Aaron's, Inc.*, 784 F.3d 154, 163 (3d Cir. 2015).

According to the Third Circuit, ascertainability requires a reliable mechanism for determining whether putative class members fall within the class definition.  *Hayes,* 725 F.3d at 355.  "[T]o satisfy ascertainability as it relates to proof of class membership, the plaintiff must demonstrate his purported method for ascertaining class members is reliable and administratively feasible, and permits a defendant to challenge the evidence used to prove class membership." *Carrera,* 727 F.3d at 308.  Furthermore, this burden is not met if "individualized fact-finding or mini-trials will be required to prove class membership."  *Id.* at 307.

The Third Circuit recently addressed the scope of the analysis necessary when determining whether a 23(b)(3) class may be certified.  *See Byrd*, 784 F.3d 154.  The plaintiffs in *Byrd* alleged that Defendant stores sold and leased computers

installed with spyware through which the defendant could
secretly monitor customers' use of the computers in violation of
the Electronic Computer Privacy Act.  *Id*. at 159.  The
plaintiffs moved to certify a class defined as persons who
leased or purchased computers from defendant's stores, and their
household members, on whose computers the spyware was installed
and activated without those persons' consent.  *Id*. at 160.
Reversing the District Court's denial of the motion, the Third
Circuit held that such a class was ascertainable.  *Id*.

First, the *Byrd* court clarified the ascertainability
inquiry:

> The ascertainability inquiry is two-fold, requiring
> plaintiff to show that: (1) the class is defined with
> reference to objective criteria; and (2) there is a
> reliable and administratively feasible mechanism for
> determining whether putative class members fall within
> the class definition.  The ascertainability requirement
> consists of nothing more than these two inquiries.  And
> it does not mean that a plaintiff must be able to
> identify all class members at class certification –
> instead, a plaintiff need only show that class members
> *can* be identified.

*Id*. at 163 (internal quotations and citations omitted).
Reviewing the "quartet of cases" in which the Circuit adopted
the ascertainability requirement, *Byrd* acknowledged that no
reliable and administratively feasible mechanism for identifying
class members exists where individualized fact-finding would be
necessary.  *Id*. at 163 (citing *Marcus*, 687 F.3d at 592-94).  The
Third Circuit emphasized, however, that trial courts should not

conflate the issue of ascertainability with other Rule 23(b)(3)
requirements such as predominance.  *Id.* at 168-69.

    The ascertainability issue has been particularly
significant where proposed classes consist of consumers who
purchased individual allegedly misrepresented products and the
proposed method of identifying class members would rely on
retail records.  *See Marcus*, 687 F.3d at 592-94 (finding
"serious ascertainability issues" where defendants did not
maintain records that would show which customers' run-flat tires
had "gone flat and been replaced," as required in the class
definition); *Carrera v. Bayer Corp.*, 727 F.3d at 303 (rejecting
certification where the retail records plaintiffs proposed using
to prove class membership did not actually identify individual
purchasers of the relevant product).  There may not be a
"records requirement," *Byrd*, 784 F.3d at 164, but individual
consumer class members must be identifiable by some reliable
method.  Forcing a defendant to rely on "persons' declarations
that they are members of the class, without further indicia of
reliability," would have serious due process implications."
*Marcus*, 687 F.3d at 594.

    Here, Plaintiffs believe that Defendants' records will be
able to identify the individuals who purchased bread and bakery
products at the relevant stores during the relevant time period

as defined by the class.  The Court disagrees for two primary
reasons.

First, as Defendants highlighted during oral argument, the
ascertainability inquiry does not end with Defendants being able
to identify individual customers who bought bread and bakery
products at the relevant stores.  The class definitions also
require that the purchased products were specifically advertised
at the time as baked in store or baked fresh.  Retail records
would not reflect such information.

The evidence Plaintiffs submitted along with their response
to the Order to Show Cause is illustrative of this underlying
ascertainability problem.  Ms. Mladenov's declaration states
that she purchased a loaf of "artisan miche bread" at Wegmans on
October 25, 2014, and she attaches a receipt with a line item
for that particular purchase.  But nothing in the receipt, and
nothing in Ms. Mladenov's declaration for that matter, indicates
that there was a sign in Wegmans that day stating that the miche
loaf was "made in house" or "freshly baked."  This is
significant because the Amended Complaint defines the class not
only as those who purchased bread or bakery products at Wegmans,
but bread and bakery products "advertised and sold as 'made in
house' and/or 'freshly baked,'" etc.  Even with clear evidence
that Ms. Mladenov purchased Wegmans bread, the Court cannot
ascertain whether that purchase places her in the class her

complaint puts forward.  Defendants' records, if they indeed
exist and provide the level of detail we see in Ms. Mladenov's
purchase, would not contain all the information necessary to
ascertain the defined classes.

To analogize to *Byrd*, the class in that case consisted of
individuals who not only purchased or leased computers from
defendants, but also that those computers contained particular
spyware.  If the defendants' records showed who purchased
computers but not which computers came loaded with the spyware,
there would have been a serious question of ascertainability.
That is the kind of issue we see here.  Defendants' records of
who purchased bread and bakery products would not alone identify
class members.  Individual and extensive fact-finding as to
whether particular bread and bakery products were advertised as
baked fresh on the particular occasions putative class members
purchased them would be required.  That extra step would trigger
mini-trials for each person who purchased the relevant products
as to what signs were present at the time he or she made the
purchase at issue.

Second, even accepting that it may be possible for
Defendants to determine credit and debit card purchasers of the
relevant bread and bakery products over the class period, or
consumers who participated in some kind of loyalty card program,
that is not so for individual cash purchasers.  Plaintiffs argue

that any inability to identify cash purchasers would not affect

the ascertainability inquiry in light of the *Byrd* court's

specific decision not to "engraft an 'underinclusivity' standard

onto the ascertainability requirement." *Byrd*, 784 F.3d at 167.

This misreads the *Byrd* opinion.  The Third Circuit stated as

follows:

> Individuals who are injured by a defendant but are
> excluded from a class are simply not bound by the outcome
> of that particular action . . . . In the context of
> ascertainability,      we      have      only      mentioned
> 'underinclusivity' with regard to whether the *records*
> used to establish ascertainability were sufficient . .
> . not whether there are injured parties that could also
> be included in the class . . . . The ascertainability
> standard is neither designed nor intended to force all
> potential   plaintiffs   who   may   have   been   harmed   in
> different ways by a particular product to be included in
> the class in order for the class to be certified.

*Id*. (internal citation omitted) (emphasis in original).  Based

on the Court's understanding of the *Byrd* opinion, if the *records*

plaintiffs rely upon are insufficient to identify those included

within the specifically defined class, an ascertainability issue

arises.[5]  An improper "underinclusiveness" argument would be that

individuals who may have suffered harm lay outside the defined

class.[6]

---

[5] The alternative would imply that a defined class would be ascertainable if
only a few of the individuals in that class could be identified, even if the
overwhelming majority of the defined class could not be identified.
[6] For example, it would be improper to argue that the class defined in the
Wegmans complaint leaves out certain individuals who purchased bread and
bakery products from Wegman's website.

Defendants stated during oral arguments and Plaintiffs did not dispute that cash purchasers of Defendants' bread and bakery products (who did not use loyalty cards) could not be identified by Defendants in any reliable way.[7]

For these reasons, the Court will strike the class allegations from the Amended Complaints.

### III. MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted."  In order to survive a motion to dismiss, a complaint must allege facts that make a right to relief more than speculative.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P. 8(a)(2).  A court must accept all allegations in a plaintiff's complaint as true, viewing them in the light most favorable to the plaintiff, *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008), but a court is not required to accept sweeping legal conclusions cast as factual allegations.  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  The pleadings must state sufficient facts to show that the legal allegations

---

[7] Further, note that Plaintiffs include subclasses in each complaint specifically for credit and debit card purchasers.  That means all non-subclass individuals would be cash purchasers.  The Court cannot imagine certifying a class where virtually everyone not in the defined subclass could not be ascertained.

are not simply possible, but plausible.  *Phillips*, 515 F.3d at

234.  "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct

alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Allegations of fraud are subject to a heightened pleading

standard, requiring a plaintiff to "state with particularity the

circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  Rule

9(b) requires a plaintiff to plead enough factual information to

put the defendant on notice of the "precise misconduct with

which [it is] charged".  *Frederico v. Home Depot,* 507 F.2d 188,

200 (3d Cir. 2007) (*citing Lum v. Bank of America,* 361 F.3d 217,

223-224 (3d Cir. 2004) (dismissing fraud claims that did not

allege the date, time and place of the alleged fraud or

otherwise inject precision or some measure of substantiation

into a fraud allegation)).

The heightened pleading standard set forth in Rule 9(b)

will apply to Plaintiffs' CFA claims.  *F.D.I.C. v. Bathgate,* 27

F.3d 850 (3d Cir. 1994) (affirming District Court's application

of Rule 9(b) to CFA claim)

## IV.  DEFENDANTS' MOTIONS TO DISMISS

The Court will address Plaintiffs' CFA, TCCWNA, and breach

of express warranty claims in turn.

### A. Plaintiffs' CFA Claims

To state a claim under the CFA, a plaintiff must allege: "(1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendant's unlawful conduct and the Plaintiffs' ascertainable loss." *Frederico,* 507 F.3d at 202 (*citing Cox v. Sears Roebuck & Co.,* 138 N.J. 2, 23-24 (1994)).  As stated above, plaintiffs must plead these fraud allegations with sufficient particularity to meet the heightened pleading standards of Fed. R. Civ. P. 9(b).  Here, Plaintiffs fail to properly plead unlawful conduct, an ascertainable loss and a causal relationship between the alleged unlawful conduct and loss.  Therefore, Plaintiffs' CFA claims will be dismissed.

### 1.   Unlawful Conduct

The CFA defines unlawful conduct or practices as follows:

> It shall be an unlawful practice for any person to misrepresent on any menu or other posted information, including advertisements, the identity of any food or food products to any of the patrons or customers of eating establishments including but not limited to restaurants, hotels, cafes, lunch counters or other places where food is regularly prepared and sold for consumption on or off the premises. This section shall not apply to any section or sections of a retail food or grocery store which do not provide facilities for on the premises consumption of food or food products.

N.J.S.A. § 56:8-2.9.

New Jersey courts have identified three different types of unlawful conduct as covered under the CFA: (1) affirmative

representations; (2) knowing omissions; and (3) regulation violations. *Frederico,* 507 F.3d at 202. An affirmative representation is "one which is material to the transaction and which is a statement of fact, found to be false, made to induce the buyer to make the purchase." *Mango v. Pierce-Coombs,* 370 N.J. Super. 239, 251 (App. Div. 2004). Plaintiffs allege unlawful affirmative representations on the part of each Defendant: posting signs or descriptions that misrepresented the origin of bread and bakery products as being made in store when in fact many of the Defendants' products are "made elsewhere, delivered frozen or subjected to a form of thermal processing or any other form or preservation, and reheated or re-baked immediately before sale." (Whole Foods Amend. Compl. ¶ 50; Wegmans Amend. Compl. ¶ 45; ACME Amend. Compl. ¶ 41).

To satisfy the heightened pleading standard for a fraudulent affirmative act, a plaintiff need not plead the particular date, time or place of the fraud; however, "the plaintiff must indicate at the very least who made the material representation giving rise to the claim and what specific representations were made." *NN & R, Inc. v. One Beacon Ins. Grp.,* 363 F. Supp. 2d 514, 518 (D.N.J. 2005) (quoting *Mardini v. Viking Freight, Inc.,* 92 F. Supp. 2d 378, 385 (D.N.J. 1999)).

This Court has found a complaint not to successfully plead unlawful conduct when plaintiffs did not specify the "precise

substance of the alleged misrepresentations which gave rise to their claims." *In re Riddell Concussion Reduction Litig.*, No. 13, 2015 WL 224429, at *10 (D.N.J. Jan. 15, 2015).  Plaintiffs in *Riddell* claimed to have been exposed to defendants' misrepresentations regarding the ability of certain football helmets to prevent concussions.  *Id.* at *9.  "However, Plaintiffs' scatter-shot pleading list[ed] examples of Defendants' marketing statements without identifying which specific statement(s), if any, Plaintiffs were exposed to."  *Id.* Since plaintiffs did not identify when the alleged misrepresentations were made and which particular advertisements plaintiffs had seen, the Court held that the complaint failed to satisfy Rule 9(b)'s particularity requirements.  *Id.* at *9-10.

The instant cases suffer from the same defect.  In the Wegmans Amended Complaint, for example, Plaintiffs state that Defendants have displayed in-store signs "*such as* 'STORE BAKED ROLLS.'"  (Wegmans Amend. Compl. ¶ 13) (emphasis added)  But the Amended Complaint does not allege that Plaintiffs actually saw this particular sign, in which store that occurred, or when Plaintiffs saw it.[8]

Attempting to distinguish *Riddell*, Plaintiffs argue that the Court "could determine exactly what misrepresentation was

---

[8] Neither do Plaintiffs in the Wegmans case claim to have read advertisements on Wegmans's website allegedly describing certain bread and bakery products as "Bread, Fresh Baked."  (Wegmans Amend. Compl. ¶ 14)

observed by each plaintiff prior to the purchase." (Pls.' Opp. to Wegmans MTD at 9)  That is simply not the case.  The Amended Complaint does not state that Plaintiffs saw the "STORE BAKED ROLLS" sign on a particular occasion and bought rolls.  In each Amended Complaint, Plaintiffs allege merely that signs *such as* certain examples exist and that Plaintiffs were misled by Defendants' advertisements.[9]

Defendants' stores contain numerous bread and bakery products.[10]  The signs advertising such products change often.  This is not a case in which all relevant items were stamped "freshly baked."  The Amended Complaints do not allege which signs Plaintiffs observed at Defendants' stores and the Court cannot therefore infer from the pleadings the specific advertisements that form the bases of Plaintiffs' CFA claims.  In the end, with regards to named Plaintiffs, the Amended Complaints allege only that Defendants have misled Plaintiffs by posting signs suggesting baked goods were made in house.  That is not the kind of particularity envisioned by Rule 9(b) and

---

[9] In contrast, allegations identifying a particular bread and bakery product Plaintiffs purchased, and a particular sign linked to that product, would likely be sufficient to plead unlawful conduct.  *See Stewart v. Smart Balance, Inc.*, No. 11-6174 (JLL), 2012 WL 4168584, at *8 (D.N.J. June 26, 2012) (finding that a complaint put defendant on notice of the precise misconduct with which it was charged by alleging that plaintiffs purchased a particular product – Smart Balance's "Fat Free Milk and Omega-3" – whose packaging contained a particular misleading statement – "Fat Free" – even though plaintiffs did not identify the specific stores in which they purchased the item or the exact dates of such purchases).
[10] During oral argument, counsel for Whole Foods stated that its stores carry thousands of bread and bakery products.

Plaintiffs cite to no cases in which similarly vague assertions were sufficient to state a CFA claim.

There is not enough precision in the Amended Complaints to put Defendants on notice of fraudulent conduct Plaintiffs allege – i.e. which particular signs and advertisements misrepresented, to Plaintiffs, the provenance of particular bread and bakery products.  Accordingly, Plaintiffs' CFA claims cannot stand.

## 2.    Ascertainable Loss

Plaintiffs also fail to properly demonstrate any ascertainable loss.  The CFA does not define what constitutes an "ascertainable loss," but the New Jersey Supreme Court has recognized that the loss must be capable of calculation, and not just hypothetical or illusory.  *Thiedemann v Mercedes-Benz USA, LLC,* 183 N.J. 234, 248 (2005); *see also Torres-Hernandez v. CVT Prepaid Solutions, Inc.*, No. 08-1057-FLW, 2008 WL 5381227, at *7 n. 3, (D.N.J. Dec. 9, 2008) ("A sufficiently plead ascertainable loss is one with enough specificity as to give the defendant notice of possible damages.").  "A cognizable injury . . . must consist of more than just unmet expectation." *Dzielak v. Whirpool Corp.*, 26 F. Supp. 3d 304, 335 (D.N.J. 2014).

There are two relevant theories to ascertain losses under the CFA: (1) the out-pocket-loss theory, and (2) the loss-in-value or benefit-of-the-bargain theory.  *Id.*  An out-of-pocket-loss theory will suffice only if the product received was

23

essentially worthless. *Id*. A benefit-of-the-bargain theory requires that the consumer be misled into buying a product that is ultimately worth less than the product that was promised. *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 99 (D.N.J. 2011). Plaintiffs claim to have sufficiently plead both theories.

In their opposition, Plaintiffs first assert that they successfully plead an out-of-pocket-loss theory and that they are entitled to a full refund of all their purchases. (Pl. Opp. at 14). However, the Amended Complaints claim only that Plaintiffs "would not have purchased the bread and bakery products, would not have paid as much for the products, or would have purchased alternative products in absence of Defendant's misleading advertisements." (Whole Foods Amend. Compl. ¶ 26; Wegmans Amend. Compl. ¶ 21; ACME Amend. Compl. ¶ 18) Plaintiffs do not state which products they purchased or the prices they paid for such products. Further, "dissatisfaction with a product . . . is not a quantifiable loss that can be remedied under the NJCFA." *Mason v. Coca-Cola,* 774 F. Supp. 2d 699, 704 (D.N.J. 2011). In *Mason*, plaintiffs alleged to have been persuaded to purchase "Diet Coke Plus" by the term "Plus" and the language "Diet Coke with Vitamins and Minerals," which "suggested to consumers that the product was healthy and contained nutritional value." *Id*. at 701. The Court found that

24

plaintiffs did not sufficiently plead an out-of-pocket-loss based merely on a claim that their expectations of the soda were disappointed. *Id.*

Nowhere in their complaints or opposition do Plaintiffs allege facts supporting an out-of-pocket loss, i.e. that the products they purchased were worthless. Plaintiffs, claiming to be health conscious consumers, do not even allege that the relevant products lacked nutritional value or were somehow less nutritious due to their not being made from scratch in store. Plaintiffs' apparent dissatisfaction in the bread and bakery products they purchased, without more, does not suffice under this theory of ascertainable loss.

In reality, the Amended Complaints allege that Plaintiffs paid an unnecessary premium for what they believed to be store-made bread, which better falls under the benefit-of-the-bargain theory of ascertainable loss. To present a benefit-of-the-bargain claim, a plaintiff must allege "(1) a reasonable belief about the product induced by a misrepresentation; and (2) that the difference in value between the product promised and the one received can be reasonably quantified." *Smajlaj,* 782 F. Supp. 2d at 99. There is no requirement that the product received actually is defective, but rather it simply must be something other than what was promised. *Id.* at 84. "Failure to quantify this difference in value results in the dismissal of a claim."

*Id.* at 101.  However, "Rule 9(b) does not require that a plaintiff allege a specific dollar amount to survive the pleadings stage." *Dzielak*, 26 F. Supp. 3d at 336.

In *Smajlaj*, the plaintiffs demonstrated ascertainable loss by stating the value of the "low sodium" soup products they expected to receive after defendant's misrepresentations, and subtracted that from the value of the regular sodium content product they actually received.  782 F. Supp. 2d at 100.  The Court has held plaintiffs not to sufficiently plead ascertainable loss on this theory, however, where plaintiffs failed to allege a comparable product to the one they actually received so as to provide a basis for calculating damages with a reasonable degree of certainty.  *See Stewart*, 2012 WL 4168584, at *10-11.  In *Stewart*, plaintiffs claimed that defendant Smart Balance's "Fat Free Omega-3" milk they purchased was not actually "fat free" (it contained one gram of fat) and detailed the lower prices of other fat free milk products they would have purchased had they known that fact.  *Id*. at *9-11.  The Court held plaintiffs did not sufficiently plead an ascertainable loss because the other milk products were not comparable to what plaintiffs received and, without such a comparable product indicating the value of what plaintiffs purchased, damages could not be quantified.  *Id*. at 11.

Here, as an initial problem, Plaintiffs do not specify the products they actually purchased.  Second, Plaintiffs give no basis for valuing the products they received as opposed to the products they were promised.  Plaintiffs allege only that Defendants charge a "premium" for "store baked" bread and bakery products, and sell "prepackaged bread and/or bakery products that are not 'store baked' and/or 'fresh baked' at a substantially lower price."  (Whole Foods Amend. Compl. ¶ 15; Wegmans Amend. Compl ¶ 15; ACME Amend. Compl. ¶ 12)

As in *Stewart*, the pleadings here do not provide a sufficient basis for quantifying Plaintiffs' alleged losses.  Plaintiffs seem to suggest that the products they purchased are more like pre-packaged bread than fresh bread, but that comparison fails the same way the comparison between different milk products failed in *Stewart*.  Reading the Amended Complaints, Defendants could not infer anything close to possible damages.  Lacking any detail as to what Plaintiffs purchased, the cost of those items, and the supposed value of what they received, the Amended Complaints do not sufficiently plead an ascertainable loss under the benefit-of-their-bargain theory.

### 3.    Causation

Plaintiffs also fail to allege facts supporting a causal nexus between Defendants' alleged misrepresentations and any

potential ascertainable loss.  To state a CFA claim, a plaintiff must allege a "causal nexus" between a defendant's unlawful conduct or practice and a Plaintiffs' ascertainable loss. *Bosland v. Warnock Dodge, Inc.,* 197 N.J. 543, 557 (2009). "Courts in this District have found allegations that a plaintiff would not have purchased a product had it been accurately labeled or that they purchased the product because of the misleading claim sufficient to plead causation." *Stewart*, 2012 WL 4168584, at *11 (internal quotations omitted) (collecting cases).  However, to properly plead causation, a plaintiff cannot rely on legal conclusions that do not identify "when statements were made or when the plaintiffs were exposed to the statements." *Torres-Hernandez v. CVT Prepaid Solutions, Inc.*, No. 3:08-cv-1057-FLW, 2008 WL 5381227 *7 (D.N.J. Dec. 17, 2008) (*quoting Dewey v. Volkswagen AG,* 558 F. Supp. 2d 505, 526-527 (D.N.J. 2008)).

In *Dewey*, Plaintiffs alleged, "in only the most general and conclusory terms," that misrepresentations on Volkswagen's website and in an owner's manual as to a vehicle's ability to withstand damage from flooding and debris "had the cause and effect of inducing cautious consumers into leasing and/or purchasing the Class Vehicles." *Id*. at 526.  The Court found these allegations insufficient to plead a causal nexus between plaintiffs' losses and defendant's affirmative misrepresentation

with the specificity required by Rule 9(b) because plaintiffs failed to allege, "when the statements were made or at what point – if ever – each Plaintiff was exposed to one or more of the statements." 558 F. Supp. 2d at 526–527.

Similarly, in *Crozier v. Johnson & Johnson Consumer Cos., Inc.,* the Court dismissed plaintiffs' CFA claims alleging affirmative misrepresentations by defendant's Neosporin advertisements, which allegedly led consumers to believe that the product contained Antibiotics, because plaintiffs failed to plead when they saw advertisements, when they bought the product and where they bought the product. 901 F. Supp. 2d 494, 506 (D.N.J. 2012). The plaintiffs' inability to detail a specific instance in which they were exposed to a specific advertisement was fatal to their claim. *Id.*

Like the plaintiffs in *Dewey* and *Crozier*, Plaintiffs here allege that they were exposed to Defendants' affirmative misrepresentations and were "induced" to pay premium prices for Defendants' products, but do not allege specific times, dates, or places for these events. They do not allege the specific signs and advertisements to which they were exposed. The Amended Complaints allege only that each "Defendant misleads and deceives consumers, including the named Plaintiffs and the other members of the Class, by portraying a product that was made, prebaked, parbaked and/or frozen as 'made in house' and/or

'fresh'" (Whole Foods Amend. Compl. ¶ 21; Wegmans Amend. Compl. ¶ 17; ACME Amend. Compl. ¶ 14).

As stated above, we do not know which specific products Plaintiffs purchased, whether those specific products were linked to specific signs or advertisements, and what those signs or advertisements stated. We have only general allegations about the kinds of signs and advertisements Defendants posted, and that, at least in the case of Whole Foods and Wegmans, Plaintiffs purchased bread and bakery products from Defendants' stores on a regular basis over the last six years. That Plaintiffs claim to be "health conscious" consumers is not enough. Without details as to particular misrepresentations and subsequent purchases, the complaints do not inject the kind of particularity required for fraud claims.

Citing to *Bonnieview Homeowners Ass'n, LLC v. Woodmont Builders, L.L.C.*, 655 F. Supp. 2d 473 (D.N.J. 2009), Plaintiffs argue that their exposure to Defendant's allegedly misleading advertisements is sufficient to establish a causal relationship. However, *Bonnieview* is easily distinguishable because plaintiffs in that case pled facts regarding a specific purchase induced by specific fraudulent representations, namely their homes. *Id.* The plaintiffs' ability in that case to tie a specific purchase to a misrepresentation satisfied the heightened pleading standard of Rule 9(b).

Here, on the other hand, Plaintiffs allege only that they purchased various bread and bakery products at premium prices over the years and would not have done so "in absence of Defendant's misleading advertisements." (See, e.g., Whole Foods Amend. Compl. ¶ 9, 26). Plaintiffs do not specify any instance in which they even saw Defendant's advertisements, either in Defendants' stores or on Defendants' websites. Plaintiffs also fail to allege which food products they purchased as a result of viewing the advertisements. The Court cannot, without more, infer from Plaintiffs' pleadings a link between an affirmative misrepresentation and an ascertainable loss. Conclusory allegations regarding numerous potential purchases of various products over a substantial period of time with the mere specter of supposedly misleading advertisements generally existing in Defendants' stores and websites will not suffice under Rule 9(b)'s heightened pleading standard.

Since Plaintiffs have not sufficiently pled unlawful conduct, an ascertainable loss, or a causal nexus between unlawful conduct and ascertainable loss, the Court will grant Defendants' motions to dismiss Plaintiffs' CFA claims.

## B. Plaintiffs' Breach of Express Warranty Claims

Under New Jersey law, an express warranty is created when a seller makes a promise, or offers a description, to a buyer related to a good or promises that a good will conform to a

31

specific affirmation, promise or description. N.J.S.A. § 12A:2-101 *et. seq.* To state a claim for breach of express warranty, a plaintiff must allege: (1) that Defendant made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description. *Dzielak,* 26 F. Supp. 3d at 324.

Here, Plaintiffs allege that Defendant falsely advertises bakery products as "made in house" and/or "fresh" and that Plaintiffs were induced to pay a premium price for the product, which they would not have done in the absence of Defendants' misleading advertisements. (See, e.g., Whole Foods Amend. Compl. ¶ 23-26). The Amended Complaints give examples of the kinds of advertisements and signs Defendants post, but do not contain specific allegations as to advertisements that Plaintiffs actually saw before making particular purchases.

Although Plaintiffs' breach of express warranty claims do not trigger the heightened pleading standard associated with fraud claims, the Court must still determine whether the facts stated in the pleadings make the breach of express warranty claims plausible. The Court finds that the Amended Complaints fail in this respect and the relevant claims must be dismissed.

At its most basic, a breach of express warranty claim requires a plaintiff to allege that she bought a product based on a particular promise regarding that product, which ultimately proved false.  Plaintiffs cannot successfully plead such a claim without identifying in the Amended Complaints any specific sign or advertisement they saw and the products they purchased as a result.  Instead, Plaintiffs present only generalities.  For example, Whole Foods allegedly placed signs "*such as* 'MADE IN HOUSE BREAD,' 'MADE IN HOUSE BAGELS AND ROLLS,'" etc. in its stores, and these kinds of "misrepresentations induced Plaintiffs and other members of the Class to pay a premium price for the products." (Whole Foods Amend. Compl. ¶¶ 18, 24 (emphasis added))

The cases to which Plaintiffs cite in support of their breach of express warranty claims all have one thing in common – the complaints in those cases alleged specific descriptions or affirmations that plaintiffs actually saw on particular products.  *See Dzielak,* 26 F. Supp. 3d at 317 (washing machine models bearing the "Energy Star" logo that did not meet those standards); *Gupta v. Asha Enterprises, L.L.C.*, 422 N.J. Super. 136, 143 (App. Div. 2011) (samosas from a particular restaurant described as "vegetarian" when they contained meat).  Without an allegation that Plaintiffs actually saw and read particular signs, the Amended Complaints do not state facts showing that

any particular product description became the basis for some specific bargain.

For these reasons, the Court will grant Defendants' motions to dismiss as to Plaintiffs' claims for breach of express warranty.

### C. Plaintiffs' Claims for Injunctive Relief

Plaintiffs' claim for injunctive relief cannot survive if their substantive claims are dismissed. *See Edelman v. Croonquist,* No. 09-1930 (MLC), 2010 WL 1816180 *9 (D.N.J. May 4, 2010). Further, "because injunctions regulate future conduct, a party seeking prospective injunctive relief must demonstrate a 'real and immediate' as opposed to a merely speculative or hypothetical threat of future harm." *Access 4 All, Inc. v. Boardwalk Regency Corp.,* No. 08-3817 (RMB/JS), 2010 WL 4860565, at *3 (D.N.J. Nov. 23, 2010) (quoting *City of Los Angeles v. Lyons,* 461 U.S. 95, 111 (1983)). Nowhere in the Amended Complaints do Plaintiffs allege any threat of immediate harm. They do not state their intention to continue to purchase Defendants' break and bakery products.

Plaintiffs argue that they are still entitled to injunctive relief based on the threat of future harm to other consumers, even if Plaintiffs do not intend to purchase the relevant products from Defendants. (See, e.g., Pls.' Opp. to Whole Foods MTD at 18-19). However, at this stage, the Court considers

34

Plaintiffs' claims as they apply to Plaintiffs alone, not the putative class. *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 659 (3d Cir. 1998). Accordingly, the Court will grant Defendants' motions to dismiss as to Plaintiffs' claims for injunctive relief.

### D. Plaintiffs' Claim for Declaratory Judgment

Plaintiffs further seek a declaration "that certain signs and/or advertisements falsely describing that the bread and bakery products as 'made in house' and/or 'fresh' are inaccurate." (See, e.g., Whole Foods Amend. Compl. ¶ 67). Plaintiffs' claims for declaratory judgment must be dismissed for the following reasons.

First, "a party requesting a declaratory judgment must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." Lattaker v. Rendell, 269 Fed. Appx. 230, 233 (3d Cir. 2008) (internal quotations omitted). Here, Plaintiffs have indicated no intention to purchase bread and bakery products from Defendants' stores. The opposite appears to be true.

Second, the Amended Complaints' counts for declaratory judgment are redundant of Plaintiffs other claims for breach of express warranty and violation of the CFA. *See Maniscalco v. Brother Intern. Corp. (USA)*, 627 F. Supp. 2d 494, 504 (D.N.J. 2009) (dismissing declaratory judgment claim where the

declaration plaintiffs sought would be duplicative of a favorable finding on their CFA claims); *Hammond v. Doan,* 127 N.J. Super. 67, 316 A.2d 68 (App. Div. 1974) ("While a declaratory judgment action is not precluded by the existence of an alternative form of relief, there is ordinarily no reason to involve its provisions where another adequate remedy is available"). Here, the declarations Plaintiffs seek in each case – that Defendants' "fresh bread" advertisements are misleading and false – are redundant of Plaintiffs' CFA and breach of express warranty claims.

Accordingly, the Court will grant Defendants' motions to dismiss Plaintiffs' declaratory judgment claims.

### E. Plaintiffs' TCCWNA Claims

Plaintiffs further allege that Defendants' alleged misrepresentations violate the New Jersey Truth-In-Consumer Contract, Warranty and Notice Act ("TCCWNA"). These claims as well.

The TCCWNA provides:

> No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act which includes any provision that violates any *clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State of Federal law* at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed.

36

N.J.S.A. 56:12-15 (emphasis added).

To properly state a claim under the TCCWNA, a plaintiff must allege each of following: (1) the plaintiff is a consumer; (2) the defendant is a seller; (3) the "seller offers a consumer contract" or gives or displays any written notice, or sign; and (4) the contract, notice or sign includes a provision that "violate[s] any legal right of a consumer" or responsibility of a seller. *Watkins v. DineEquity, Inc.,* 591 F. App'x 132, 135 (3d Cir. 2014); *Bosland v. Warnock Dodge, Inc.,* 396 N.J. Super. 267 (App. Div. 2007), *aff'd*, 194 N.J. 543 (2009). The TCCWNA only bolsters rights established by other laws; it does not create any new consumer rights. *Watkins,* 591 F. App'x at 134.

Plaintiffs bring their TCCWNA claims under two theories: Defendants' alleged violation of Plaintiffs' rights under the CFA, and Defendants' alleged violation of Plaintiffs' rights under 21 C.F.R. § 101.95, a federal regulation issued pursuant to the Food, Drug and Cosmetics Act ("FDCA") regarding the use of the term "fresh" in food labeling.[11] (Whole Foods Amend. Compl. ¶ 80-89; Wegmans Amend. Compl. ¶¶ 76-79; ACME Amend. Compl. ¶¶ 71-77).

---

[11] For reasons unknown to the Court, Plaintiffs do not assert their TCCWNA claim based on the alleged FDCA violation in the Amended Complaint against Wegmans. As a result, the Court considers these TCCWNA claims as they apply to Whole Foods and ACME only.

Since the Court finds that Plaintiffs' have failed to state viable CFA claims, Plaintiffs' TCCWNA claims cannot survive to the extent they rely on the alleged CFA violations. *See Ensey v. Gov't Employers Ins. Co.*, No. 12-07669 (JEI/KMW), 2013 WL 5963113, at *7 (D.N.J. Nov. 7, 2013) (dismissing TCCWNA claim following dismissal of CFA claim).

Plaintiffs' TCCWNA claims also fail to the extent they rely on alleged violations of 21 C.F.R. § 101.95. "It is well settled . . . that the FDCA creates no private right of action." *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781, 788 (3d Cir. 1999). In *In re Orthopedic*, the Third Circuit held that plaintiffs could not "invoke the mantle of conspiracy" to pursue a cause of action under the FDCA, which otherwise gave them no right of action. *Id.* at 789-90.

Neither can Plaintiffs here use TCCWNA to bootstrap a FDCA claim they could not otherwise bring. While this Court has not yet ruled specifically on whether an alleged FDCA violation properly forms the basis of liability under the TCCWNA, the Court has rejected TCCWNA claims based on other statutes that would not have granted plaintiffs a private right of action. *See Castro v. Sovran Self Storage, Inc.*, No. 14-6446 (JEI), 2015 WL 4380775, at *11-12 (dismissing TCCWNA claim brought for violation of the Insurance Producer Licensing Act, which does not provide for private right of action). Other district courts

have also dismissed attempts to circumvent the FDCA's denial of a private right of action. *See, e.g., Summit Technology, Inc. v. High-Line Medical Instruments Co., Inc.,* 922 F. Supp. 299, 305-06 (C.D. Cal. 1996) (denying plaintiff's attempt to use the Lanham Act as a vehicle for enforcing the FDCA).

Accordingly, the Court will grant Defendants' motions to dismiss Plaintiffs' TCCWNA claims.


### V.   Conclusion

For the reasons set forth above, the Court will **STRIKE** the class allegations from the Amended Complaints and **GRANT** Defendants' motions to dismiss named Plaintiffs' claims.  An appropriate Order accompanies this Opinion.


Date: August 26, 2015


                              s/ Joseph E. Irenas          _
                         **Joseph E. Irenas, S.U.S.D.J.**